UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                              Plaintiff,                    6:23-cv-751 (BKS/TWD)

v.

A RED VOLVO TRACTOR,
VIN #: 4V4NC9TH15N390415, BEARING NEW
JERSEY PLATES AY-143D, WITH AN ATTACHED 40-
FOOT ALUMINUM GARBAGE TRAILER BEARING
NEW JERSEY REGISTRATION TZB50N,

                              Defendant.

---

**Appearances:**

*For Plaintiff United States of America:*
Carla B. Freedman
United States Attorney
Elizabeth A. Conger
Assistant United States Attorney
United States Attorney's Office
Northern District of New York
100 South Clinton Street
Syracuse, New York 13261-7198

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff the United States of America ("the Government") commenced this civil forfeiture action via verified complaint for forfeiture in rem against a red Volvo tractor, VIN #: 4V4NC9TH15N390415, bearing New Jersey plates AY-143D, with an attached 40-foot aluminum garbage trailer bearing New Jersey registration TZB50N ("Defendant-Vehicle"), pursuant to 18 U.S.C. § 981(a)(1)(A) as property involved in violations of 18 U.S.C. § 1956 and

pursuant to Rule G of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"). (Dkt. No. 1.) Presently before the Court is the Government's motion for default judgment and for entry of a final order of forfeiture under Rule 55(b) of the Federal Rules of Civil Procedure and General Order #15 of the United States District Court for the Northern District of New York. (Dkt. No. 10-1.) For the reasons that follow, the Government's motion for default judgment is denied without prejudice to renewal.

## II.   BACKGROUND

### A.   Factual Background[1]

This matter arose in connection with a Federal Bureau of Investigation ("FBI") and New York State Police ("NYSP") investigation into a credit card skimming scheme from New Jersey operating in Central New York. (Dkt. No. 1, ¶ 10.)[2] On or about January 18, 2023, at approximately 6:15 a.m., the owner of a credit card called a Stewart's Shops convenience store and gas station located at 2463 State Route 12B, Hamilton, New York, 13346, and informed an employee that an unauthorized charge in the amount of $175.00 had been made on his card at the store. (*Id.* ¶ 13.) The employee called 911 and notified the dispatcher that the suspect vehicle—Defendant-Vehicle—was still parked adjacent to the store. (*Id.* ¶ 14.) The employee told law enforcement that he had heard an audible notification for "pump seven," the high-flow diesel pump, at 4:15 a.m. that morning and saw on his computer that fuel was being pumped from that location. (*Id.* ¶ 15.) The employee stated that this was unusual because tractor trailers typically do not arrive until 5:00 a.m. when the store opens. (*Id.*) The employee told law enforcement that

---

[1] These facts are drawn from the verified complaint. (Dkt. No. 1.) The well-pleaded allegations therein are deemed admitted and assumed to be true for purposes of this motion. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).

[2] "Skimming" occurs when devices illegally installed on ATMs, point-of-sale terminals, or fuel pumps capture data or record cardholders' personal identification numbers; perpetrators then use the data to create fake debit or credit cards and steal from victims' accounts. (*Id.* ¶ 11.)

pump seven stopped pumping at approximately 4:21 a.m., and the sale made at that pump totaled $174.99. (*Id.* ¶ 16.) The employee said that Defendant-Vehicle then parked behind the store at approximately 4:25 a.m. (*Id.*)

NYSP Troopers were dispatched to the store and observed Defendant-Vehicle parked adjacent to the store on the north side of the parking lot carrying an unusually large amount of weight on its rear tires. (*Id.* ¶¶ 12, 17.) Defendant-Vehicle was occupied by two individuals: Gilberto Javier Fernandez Martinez, who occupied the driver's seat, and Yosiel Ruiz Linares, who occupied the passenger's seat. (*Id.* ¶¶ 18–20.) Martinez had a Class A license from Florida, and Linares had a Class D license from New Jersey. (*Id.* ¶ 19–20.) Martinez and Linares informed the Troopers that they only spoke Spanish. (*Id.* ¶ 18.) The license plate on Defendant-Vehicle was registered to "MMJ Logistics" with an address matching Linares's home address in Union, New Jersey. (*Id.* ¶ 21.) The plate on the trailer was registered to "MMY Logistics," with an address located in Elizabeth, New Jersey. (*Id.* ¶ 22.)

A Trooper with the NYSP Commercial Vehicle Enforcement Unit ("CVEU") who observed Defendant-Vehicle at the store on January 18, 2023, made the following observations about Defendant-Vehicle "based upon his knowledge, and sixteen years of service with the NYSP": Defendant-Vehicle had "what appeared to be non-manufactured holes in the front wall leading into the cargo space of the unit"; Defendant-Vehicle had "three gasoline lines running from proper fittings located on a cross member of the power unit going into the trailer unit," which "was not consistent with any commercial vehicle combination unit" the CVEU Trooper had ever inspected; "each fuel tank on the power unit had a fabricated outlet valve with a fuel line attached"; "the fuel management system was not consistent with any OEM Volvo power

3

unit" the CVEU Trooper had ever seen; and the CVEU Trooper believes "the unit was designed to transfer fuel from the main tanks to the trailer unit." (*Id.* ¶ 29.)

Troopers interviewed an Asset Protection Manager for Stewart's Shops who stated that she had been tracking a group of individuals from New Jersey who were using skimmed credit card information to purchase fuel from multiple Stewart's Shops locations. (*Id.* ¶ 23.) The Asset Protection manager stated that she reviewed surveillance footage from Hamilton, New York, on the prior day, January 17, 2023, showing a Hispanic male pumping gas into Defendant-Vehicle at pump seven for forty minutes. (*Id.* ¶ 24.) In approximately twenty-two transactions utilizing ten separate credit card numbers, 691.452 gallons of diesel totaling $3,802.29 was pumped into Defendant-Vehicle at pump seven that day. (*Id.* ¶ 25.) The Asset Protection Manager sent Troopers images of the man who pumped the gas on that occasion, a list of credit card numbers used, and videos of the incident. (*Id.* ¶ 26.)

Law enforcement learned that Defendant-Vehicle was observed at "Christian Fabrication," a fuel station located at 1033 State Route 20, West Winfield, New York, on January 17, 2023. (*Id.* ¶ 27.) On that occasion, a large amount of fuel was pumped into Defendant-Vehicle using numerous credit and debit cards. (*Id.*) The owner of Christian Fabrication informed law enforcement that this was not the first time that Defendant-Vehicle had "been observed fueling up" at Christian Fabrication using multiple credit cards. (*Id.* ¶ 28.)

On January 18, 2023, a New York State search warrant was issued to search Defendant-Vehicle for stolen fuel, and photographs were taken of the exterior and interior of Defendant-Vehicle. (*Id.* ¶ 30.) During execution of the search warrant, law enforcement officers recovered the following items:

a. 18 Byrne Dairy debit cards;

4

      b. 29 American Express gift cards;

      c. 80 Vanilla Visa gift cards;

      d. 5 MasterCard gift cards;

      e. 1 Visa Debit Gift Cards;

      f. 1 MSR X6 Skimmer; and

      g. 5 Skimmers.

(*Id.* ¶ 31.) Five of the cards seized during execution of the search warrant were later found to correspond to cards used to pay for the $3,802.29 in fuel pumped into Defendant-Vehicle on January 17, 2023. (*Id.* ¶ 32.) Three of the seized cards were used numerous times during the fueling of Defendant-Vehicle on this occasion. (*Id.*) During execution of the search warrant, law enforcement officers also observed that the fuel lines that went into the trailer of Defendant-Vehicle were attached to a large steel tank placed in the back of the trailer and that the tank was "as wide as the trailer and nearly as long." (*Id.* ¶ 33.) A CVEU Trooper examined both the truck and the trailer of Defendant-Vehicle and found them, at 93,000 pounds, to be overweight. (*Id.* ¶ 34.)

      The same day, approximately 6,423 gallons of diesel fuel, which is now being held at a facility in Rome, New York, was pumped out of Defendant-Vehicle. (*Id.* ¶ 35.) The facility that pumped the fuel out of Defendant-Vehicle was unable to pump all of the fuel out of Defendant-Vehicle. (*Id.*) Defendant-Vehicle was towed to an impound lot in Clinton, New York, and is presently parked at that location. (*Id.* ¶ 36.)

      On January 19, 2023, Linares arrived at the Hamilton, New York, Police Department with a woman named Migdareli Dejesus to retrieve Defendant-Vehicle. (*Id.* ¶ 37.) Their request

to retrieve Defendant-Vehicle was denied because the vehicle is not roadworthy and is hazardous as the tank still contains fuel. (*Id.* ¶ 38.)

### B. Procedural Background

On June 20, 2023, the Government filed its verified complaint for forfeiture in rem. (Dkt. No. 1.) On June 21, 2023, the Clerk of Court issued a warrant for arrest of articles in rem for Defendant-Vehicle. (Dkt. No. 2.) The warrant was executed on August 14, 2023. (Dkt. No. 6, at 4.)

On July 4, 2023, and for thirty consecutive days thereafter, the Government published public notice of this action on an official government forfeiture website, www.forfeiture.gov. (Dkt. No. 10-2, ¶ 4; Dkt. No. 3.) On July 5, 2023, the Government attempted to serve copies of the verified complaint, warrant for arrest of articles in rem, and notice to potential claimants on Linares, Martinez, and Dejesus at their last known addresses via certified and regular mail. (Dkt. No. 10-2, ¶ 3(a); Dkt. No. 4.) The Government received return-receipts indicating delivery as to Martinez and Linares, but the mailing to Dejesus was marked "unclaimed" and was "returned to sender." (Dkt. No. 4, at 2–3.)

On September 11, 2023, the Government requested an entry of default and submitted a supporting affidavit. (Dkt. Nos. 7, 7-1.) On September 12, 2023, the Clerk entered default of Defendant-Vehicle. (Dkt. No. 8.) The Government filed the instant motion on September 14, 2023, and attempted to serve its motion papers and the briefing schedule on Linares, Martinez, and Dejesus via regular mail. (Dkt. No. 11.) The mailings to Linares and Dejesus were returned undeliverable, and the Government requested that the Court hold its decision on the Government's motion for default judgment in abeyance while the Government attempted to serve Linares and Dejesus at a new address. (Dkt. No. 12.) The Court granted the Government's request and ordered that the Government file a status report by November 7, 2023. (Dkt. No. 13.)

The Government attempted to serve its motion papers, along with the Court's order granting the Government's request to hold in abeyance its decision on the Government's motion for default judgment, on Linares and Dejesus at the new address via certified mail, return-receipt requested, and regular mail. (Dkt. No. 14.)

On November 8, 2023, the Government filed a status report indicating that "notice was left at the address for both potential claimants on November 1, 2023," but "the government ha[d] not received signed receipts for the packages," and the Government stated that "it seems likely that the certified mailings will be returned . . . by the Postal Service." (Dkt. No. 15.) The Government subsequently "received both mailings back as undeliverable from this service attempt," and indicated that it was "unclear whether the USPS attempted service at the correct address." (Dkt. No. 18, at 1.) The Government made an additional attempt to serve its motion papers on Linares and Dejesus on December 28, 2023, via certified mail, return-receipt requested. (*Id.*; Dkt. No. 16.) "According to the USPS tracking system, the mailing to Linares was picked up on January 5, 2024," and "the mailing to Dejesus was marked as 'unclaimed' on January 24, 2024," and was "returned to sender." (Dkt. No. 18, at 1.) The Government indicated on January 29, 2024, that it "longer requests that [the Court's] decision be held in abeyance." (*Id.*)

No verified claim or answer has been filed in this action, and the last date for potential claimants to file a claim was September 2, 2023. (Dkt. No. 10-2, ¶ 5.)

III.   **STANDARD OF REVIEW**

    A.   **Default Judgment**

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, under Rule 55(a), the plaintiff must obtain a clerk's entry of default. Fed. R. Civ. P. 55(a)

7

("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."); *see also* N.D.N.Y. L.R. 55.1 (requiring a party seeking a clerk's entry of default to "submit an affidavit showing that (1) the party against whom it seeks a judgment . . . is not an infant, in the military, or an incompetent person (2) a party against whom it seeks a judgment for affirmative relief has failed to plead or otherwise defend the action . . . and (3) it has properly served the pleading to which the opposing party has not responded"). Second, after a default has been entered against a defendant, and the defendant fails to move to set aside the default under Rule 55(c), the plaintiff must "apply to the court for entry of a default judgment" under Rule 55(b)(2). *Priestley*, 647 F.3d at 505; *see also* N.D.N.Y. L.R. 55.2(b) ("A party shall accompany a motion to the Court for the entry of a default judgment, pursuant to Fed. R. Civ. P. 55(b)(2), with a clerk's certificate of entry of default . . . a proposed form of default judgment, [] a copy of the pleading to which no response has been made, . . . [and] an affidavit."). "Notice of the application must be sent to the defaulting party so that it has an opportunity to show cause why the court should not enter a default judgment." *United States v. One 2012 Toyota Venza XLE, VIN # 4T3B3BB7CU073918*, No. 19-cv-928, 2020 WL 7407749, at *2, 2020 U.S. Dist. LEXIS 190799, at *4 (N.D.N.Y. Oct. 15, 2020) (citation omitted).

By failing to answer a complaint or oppose a motion for default judgment, a party is deemed to have admitted the well-pleaded factual allegations in the complaint. *See Greyhound Exhibitgroup*, 973 F.2d at 158 ("[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability."); *United States v. Two Hundred & Eighty Thousand Dollars & Zero Cents More or Less, in United States Currency*, No. 20-cv-4442, 2021 WL 2980540, at *3, 2021 U.S. Dist. LEXIS 131325, at *6 (E.D.N.Y. July 14, 2021) ("A court

considering a motion for default judgment 'deems all the well-pleaded allegations in the pleadings to be admitted' . . . ." (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1997))). However, "a pleading's legal conclusions are not assumed to be true." *Lelchook v. Islamic Republic of Iran*, 393 F. Supp. 3d 261, 265 (E.D.N.Y. 2019) (citation omitted). Before entering default judgment, a court must review the complaint to determine whether the plaintiff has stated a valid claim for relief. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *Two Hundred & Eighty Thousand Dollars & Zero Cents More or Less*, 2021 WL 2980540, at *3, 2021 U.S. Dist. LEXIS 131325, at *6. The court "need not agree that the alleged facts constitute a valid cause of action." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (quoting *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)); *see also United States v. $73,313.00 in U.S. Currency*, No. 22-cv-612, 2023 WL 1102601, at *2, 2023 U.S. Dist. LEXIS 14866, at *4 (N.D.N.Y. Jan. 30, 2023) ("[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." (quoting *Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 186 (E.D.N.Y. 2009))).

**B.     Forfeiture in Rem**

"In rem forfeiture actions are governed by Rule G of the [Supplemental Rules] and the Civil Asset Forfeiture Reform Act of 2000," 18 U.S.C. § 981 et seq. *See United States v. Vazquez-Alvarez*, 760 F.3d 193, 197 (2d Cir. 2014). "The Federal Rules of Civil Procedure also apply to [forfeiture in rem] proceedings except to the extent that they are inconsistent with the[] Supplemental Rules." Supp. R. A(2); *accord United States v. Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents ($417,143.48)*, No. 13-cv-5567, 2015 WL 5178121, at *4, 2015 U.S. Dist. LEXIS 117692, at *9 (E.D.N.Y. Sept. 2, 2015),

*aff'd sub nom. United States v. $417,143.48, Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents*, 682 F. App'x 17 (2d Cir. 2017).

Under Supplemental Rule G, a complaint for forfeiture in rem must:

> (a) be verified;
> (b) state the grounds for subject-matter jurisdiction, in rem jurisdiction over the defendant property, and venue;
> (c) describe the property with reasonable particularity;
> (d) if the property is tangible, state its location when any seizure occurred and—if different—its location when the action is filed;
> (e) identify the statute under which the forfeiture action is brought; and
> (f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

Supp. R. G(2). Furthermore, "[i]f the defendant is not real property . . . the clerk must issue a warrant to arrest the property if it is in the government's possession, custody, or control." Supp. R. G(3)(b)(i).

Supplemental Rule G(4) sets forth the notice requirements for forfeiture in rem actions: the government "must send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government," Supp. R. G(4)(b)(i), and notice by publication, which is required unless certain conditions are met, can be effectuated by "posting a notice on an official internet government forfeiture site for at least 30 consecutive days," Supp. R. G(4)(a)(iv)(C).

Once the government has commenced a forfeiture in rem action, a claimant "who asserts an interest in the defendant property may contest the forfeiture by filing a claim in the court where the action is pending." Supp. R. G(5)(a)(i); *accord Vazquez-Alvarez*, 760 F.3d at 197. The claimant must file their claim "not later than 30 days after the date of service of the Government's complaint or, as applicable, not later than 30 days after the date of final publication of notice of the filing of the complaint." *See* 18 U.S.C. § 983(a)(4)(A); *accord* Supp.

10

R. G(5)(a)(ii). "A claimant must serve and file an answer to the complaint or a motion under Rule 12 within 21 days after filing the claim." Supp. R. G(5)(b). However, "[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." 18 U.S.C. § 983(a)(3)(D).

"[T]he burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). "[I]f the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3).

## IV. DISCUSSION

### A. Rule 55

As an initial matter, the Court must determine whether the Government has complied with the procedural requirements for obtaining default judgment under Rule 55 of the Federal Rules of Civil Procedure. On September 11, 2023, the Government requested a clerk's entry of default under Federal Rule of Civil Procedure 55(a) and General Order #15, and the Government submitted an affidavit affirming that (1) "[a]ll known potential claimants were served"; (2) "public notice of this action was published on an official government forfeiture site . . . for thirty consecutive days"; (3) the Government "believes it has taken reasonable steps to attempt to provide notice of this action to all known, and unknown, potential claimants[;] [s]uch claimants have been served with the pleadings in this action, and failed to plead or otherwise defend the action, as provided by the [Supplemental Rules]"; (4) "[n]either a verified claim nor an answer has been filed in this action, and the last date for potential claimants to file a claim" had passed; and (5) "no person thought to have an interest in [Defendant-Vehicle] is an infant, incompetent,

11

or presently engaged in military service." (Dkt. No. 7-1, ¶¶ 3–7.) Thus, on September 12, 2023, the Government properly received a clerk's entry of default. (Dkt. No. 8.) The Government then moved for default judgment and attached the clerk's certificate of entry of default, (Dkt. No. 10-5), a proposed form of default judgment, (Dkt. No. 10-4), a copy of the pleading to which no response has been made, (Dkt. No. 10-6), and a supporting affidavit, (Dkt. No. 10-2), in satisfaction of Local Rule 55.2(b). The Government has therefore complied with the procedural requirements of Rule 55 and Local Rule 55.2.

      **B.**      **Supplemental Rule G**

Because the Government brings an action for forfeiture in rem, the Court must also examine whether the Government complied with the requirements of the Supplemental Rules. *See Vazquez-Alvarez*, 760 F.3d at 197. In compliance with Supplemental Rule G(3)(b)(i), the Clerk issued a warrant to arrest Defendant-Vehicle. (Dkt. Nos. 2, 6.) And the Government has complied with the notice requirements of Supplemental Rule G(4). First, the Government published public notice of the action on an official government forfeiture website, www.forfeiture.gov, from July 4, 2023, to August 2, 2023, (Dkt. No. 3; Dkt. No. 10-2, ¶ 4), in satisfaction of Supplemental Rule G(4)(a). Additionally, the Government satisfied Supplemental Rule G(4)(b) by attempting to provide direct notice to all known potential claimants by means reasonably calculated to reach the potential claimant. *See* Supp. R. G(4)(b). To wit, the Government attempted to serve copies of the verified complaint, warrant for arrest of articles in rem, and notice to potential claimants on Linares, Martinez, and Dejesus at their last known addresses via certified and regular mail. (Dkt. No. 10-2, ¶ 3(a); Dkt. No. 4.) The Government also attempted to serve its motion papers and the briefing schedule on Linares, Martinez, and Dejesus via regular mail. (Dkt. No. 11.) While the Government's motion was held in abeyance, the Government again attempted to its motion papers on Linares and Dejesus at a new address

via certified mail, return-receipt requested, and regular mail. (Dkt. No. 14.) The Government subsequently made an additional attempt to serve its motion papers on Linares and Dejesus on December 28, 2023, via certified mail, return-receipt requested. (Dkt. No. 16.) The Government has asserted that "[a]ll known potential claimants were served" and that "it has taken reasonable steps to attempt to provide notice of this action to all known, and unknown, potential claimants." (Dkt. No. 10-2, ¶¶ 3, 7.) This is sufficient to satisfy Supplemental Rule G(4). *See United States v. Starling*, 76 F.4th 92, 96 n.2 (2d Cir. 2023) ("The government need not provide formal service of process in a civil forfeiture proceeding; it must only give notice 'to any person who reasonably appears to be a potential claimant on the facts known to the government,' and it may do so by any 'means reasonably calculated to reach the potential claimant.'" (quoting Supp. R. G(4)(b)(i), (iii)(A))).

However, the Government must also satisfy the requirements of Supplemental Rule G(2). The complaint is verified in satisfaction of Supplemental Rule G(2)(a), (Dkt. No. 1, at 1, 9); states the grounds for subject-matter jurisdiction, in rem jurisdiction over Defendant-Vehicle, and venue in satisfaction of Supplemental Rule G(2)(b), (*id.* ¶¶ 3–9); describes the property with reasonable particularity in satisfaction of Supplemental Rule G(2)(c), (*id.* ¶¶ 2, 29, 33); states Defendant-Vehicle's location when seizure occurred and when the action was filed in satisfaction of Supplemental Rule G(2)(d), (*id.* ¶¶ 17, 36); and identifies the statute under which the forfeiture action is brought in satisfaction of Supplemental Rule G(2)(e), (*id.* ¶¶ 3–5).

But the Court must still determine whether the verified complaint "state[s] sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." *See* Supp. R. G(2)(f). The Court must also determine whether "the Government [has] establish[ed] that there was a substantial connection between [Defendant-Vehicle] and the

offense" on which the Government's theory of forfeiture is premised. *See* 18 U.S.C. § 983(c)(3). Because these questions involve examination of the sufficiency of the facts alleged in the verified complaint, the Court analyzes them together.

### C. Sufficiency of the Verified Complaint

The Government premises its forfeiture in rem action on 18 U.S.C. § 981(a)(1)(A). (Dkt. No. 1, ¶ 3.) The Government alleges that Defendant-Vehicle was involved in money-laundering violations, 18 U.S.C. § 1956, and that the specified unlawful activities underlying the § 1956 offense include violations of 18 U.S.C. § 1029(a), access device fraud; § 1029(b)(2), conspiracy to commit access device fraud, § 1028, identity theft; and § 1028A, aggravated identity theft. (Dkt. No. 1, ¶¶ 3–5.)

Under 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property," is "subject to forfeiture to the United States." Section 1956 provides in relevant part that:

> (a)
>> (1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—
>>> (A)
>>>> (i) with the intent to promote the carrying on of specified unlawful activity; or . . .
>>>
>>> (B) knowing that the transaction is designed in whole or in part—
>>>> (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity . . .

14

shall [be guilty of an offense].

*Id.* § 1956(a).[3] In other words, § 1956(a):

> require[s] the government to prove that the defendants, (1) knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, (2) conducted or attempted to conduct a financial transaction (3) which in fact involved the proceeds of that unlawful activity, (4) either (a) with the intent to promote the carrying on of that unlawful activity or (b) with the knowledge that the transaction was designed at least in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the unlawful activity.

*United States v. Gotti*, 459 F.3d 296, 334 (2d Cir. 2006). Under § 1956, "the term 'financial transaction' means (A) a transaction which in any way or degree affects interstate or foreign commerce (i) involving the movement of funds by wire or other means or (ii) involving one or more monetary instruments, or (iii) involving the transfer of title to any real property, vehicle, vessel, or aircraft, or (B) a transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree." *Id.* § 1956(c)(4). The term "specified unlawful activity" includes, among others, violation of 18 U.S.C. § 1028 and violation of 18 U.S.C. § 1029. *See id.* §§ 1956(c)(7)(A), 1961(1).

"[T]he burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). Under Supplemental Rule G(2)(f), the verified complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." And because the Government's theory of forfeiture is that Defendant-Vehicle was used to commit or facilitate or

---

[3] Section 1956 includes other provisions not apparently implicated here. *See id.* § 1956(a)(1)(A)(ii), (a)(1)(B)(ii), (a)(3).

was involved in the commission of an alleged violation of 18 U.S.C. § 1956, the Government must "establish that there was a substantial connection between [Defendant-Vehicle] and the [alleged violation of 18 U.S.C. § 1956]." *See* 18 U.S.C. § 983(c)(3). However, "[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." 18 U.S.C. § 983(a)(3)(D).

Here, it is not clear that the facts as alleged in the verified complaint support a reasonable belief that the Government will be able to meet its burden of proof at trial in establishing the "promot[ion] [of] the carrying on" of access device fraud in violation of 18 U.S.C. § 1029(a) or identity theft in violation of 18 U.S.C. § 1028, *see id.* § 1956(a)(1)(A)(i), or a design to "conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of" those specified unlawful activities, *see id.* § 1956(a)(1)(B)(i); *Gotti*, 459 F.3d at 334.

Indeed, "promotion" money laundering "require[s] the government to prove that the defendants . . . conducted a financial transaction with the proceeds [of some form of unlawful activity] 'with the intent to promote the carrying on of *that* unlawful activity." *In re 650 Fifth Ave. & Related Props.*, 777 F. Supp. 2d 529, 561 (S.D.N.Y. 2011) (second alteration in original) (quoting *Gotti*, 459 F.3d at 334). The verified complaint does not appear to contain allegations involving the promotion of the carrying on of access device fraud or identity theft. Rather, the verified complaint contains allegations of the already completed acts of access device fraud and identity theft and the subsequent illicit procurement of diesel fuel. (Dkt. No. 1, ¶¶ 13, 16, 23–25, 27–29, 31–35.) But "[p]roof that financial transactions involving the proceeds of unlawful activity merely promoted other criminal activity is insufficient to support a conviction under section 1956(a)(1)(A)(i)." *650 Fifth Ave.*, 777 F. Supp. 2d at 561 (quoting *United States v. Dovalina*, 262 F.3d 472, 475 (5th Cir. 2001)).

Similarly, "the concealment element of the money laundering statute requires that the purpose, not merely the effect, of the endeavor must be to conceal or disguise a listed attribute of the proceeds." *United States v. Garcia*, 587 F.3d 509, 512 (2d Cir. 2009) (citing *Cuellar v. United States*, 553 U.S. 550, 564–68 (2008)); *see also United States v. Huezo*, 546 F.3d 174, 179 (2d Cir. 2008) ("*Cuellar* confirms that a conviction for . . . money laundering [under § 1956(a)(1)(B)(i)] . . . requires proof that the purpose or intended aim of the transaction was to conceal or disguise a specified attribute of the funds."). Again, the verified complaint does not appear to contain allegations as to any design to conceal or disguise the proceeds of the alleged access device fraud and identity theft; rather, the verified complaint alleges the use of the proceeds of the alleged access device fraud and identity theft to purchase diesel fuel. (Dkt. No. 1, ¶¶ 15–16, 24–25, 27–28, 32.)

Absent any allegations related to either the promotion of a specified unlawful activity or the concealment of the nature of proceeds from specified unlawful activity, the Court cannot determine whether the Government has met its burden to establish that Defendant-Vehicle is subject to forfeiture at this point, *see* 18 U.S.C. §§ 983(c)(1), 983(c)(3); *see also* Supp. R. G(2)(f); 18 U.S.C. § 981(a)(1)(A). Accordingly, the Government's motion for default judgment is denied.

## V.     LEAVE TO RENEW

Under 18 U.S.C. § 983(c)(2), "the Government may use evidence gathered after the filing of a complaint for forfeiture to establish, by a preponderance of the evidence, that property is subject to forfeiture." Moreover, "[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." *Id.* § 983(a)(3)(D). The Court therefore denies the Government's motion for default judgment without prejudice to renewal. The Government may renew their

17

motion for default judgment by filing, within thirty days, any evidence submitted pursuant to 18 U.S.C. § 983(c)(2) and a memorandum of law addressing how the Court should apply the provisions of Supplemental Rule G(2)(f) and 18 U.S.C. § 981(a)(1)(A), § 983(a)(3)(D), § 983(c)(1), and § 983(c)(3) in its analysis of the Government's renewed motion.

## VI. CONCLUSION

For these reasons, it is hereby

**ORDERED** that the Government's motion for default judgment, (Dkt. No. 10-1), is **DENIED** without prejudice; and it is further

**ORDERED** that the Government may renew their motion for default judgment by filing, within thirty days of the date of this Order, any evidence submitted pursuant to 18 U.S.C. § 983(c)(2) and a memorandum of law addressing the issues enumerated herein.

**IT IS SO ORDERED.**

Dated: March 29, 2024
Syracuse, New York

*Brenda K. Sannes*
Brenda K. Sannes
Chief U.S. District Judge