**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

                Plaintiff,                6:23-cv-751 (BKS/TWD)

v.

A RED VOLVO TRACTOR,
VIN #: 4V4NC9TH15N390415, BEARING NEW
JERSEY PLATES AY-143D, WITH AN ATTACHED 40-
FOOT ALUMINUM GARBAGE TRAILER BEARING
NEW JERSEY REGISTRATION TZB50N,

                Defendant.

**Appearances:**

*For Plaintiff United States of America:*
Carla B. Freedman
United States Attorney
Elizabeth A. Conger
Assistant United States Attorney
United States Attorney's Office
Northern District of New York
100 South Clinton Street
Syracuse, New York 13261-7198

**Hon. Brenda K. Sannes, Chief United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I.  INTRODUCTION

Plaintiff the United States of America ("the Government") commenced this civil forfeiture action via verified complaint for forfeiture in rem against a red Volvo tractor, VIN #: 4V4NC9TH15N390415, bearing New Jersey plates AY-143D, with an attached 40-foot aluminum garbage trailer bearing New Jersey registration TZB50N ("Defendant Vehicle"), pursuant to 18 U.S.C. § 981(a)(1)(A) as property involved in violations of 18 U.S.C. § 1956 and

pursuant to Rule G of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions. (Dkt. No. 1, ¶¶ 1–3). Presently before the Court is the Government's renewed motion for default judgment and for entry of a final order of forfeiture under Rule 55(b) of the Federal Rules of Civil Procedure and General Order #15 of the United States District Court for the Northern District of New York. (Dkt. No. 22-1.) For the reasons that follow, the Government's motion for default judgment is granted.

## II.     RELEVENT PROCEDURAL BACKGROUND[1]

On September 14, 2023, after obtaining a clerk's entry of default, the Government moved for default judgment pursuant to Federal Rule 55(b) and General Order #15 of the United States District Court for the Northern District of New York. (Dkt. No. 10-1). After reviewing the Government's motion, the Court found that it could not determine whether the Government had met its burden to establish that Defendant Vehicle was subject to forfeiture absent any allegations related to either the promotion of a specified unlawful activity or the concealment of the nature of proceeds from specified unlawful activity. *United States v. A Red Volvo Tractor*, No. 6:23-cv-751, 2024 WL 1345526, at *8, 2024 U.S. Dist. LEXIS 57017, at *23 (N.D.N.Y. Mar. 29, 2024). The Court granted leave to renew, (*id.*), and on May 29, 2024, the Government filed the instant motion (Dkt. No. 22-1).

## III.    DISCUSSION

Under 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property," is "subject to forfeiture to the United States." The

---

[1] The Court assumes familiarity with the facts and procedural history set forth in the Court's decision denying Plaintiffs' prior motion for default judgment. *United States v. A Red Volvo Tractor*, No. 6:23-cv-751, 2024 WL 1345526, at *1–4, 2024 U.S. Dist. LEXIS 57017, at *1–10 (N.D.N.Y. Mar. 29, 2024).

Government argues that the Defendant Vehicle was property involved in the violation of 18 U.S.C. § 1956(a)(1)(A)(i), promotional money laundering, and 18 U.S.C. § 1956(a)(1)(B)(i), concealment money laundering. To establish a violation of these provisions:

> [T]he government [must] prove that the defendants, (1) knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, (2) conducted or attempted to conduct a financial transaction[,] (3) which in fact involved the proceeds of that unlawful activity, (4) either (a) with the intent to promote the carrying on of that unlawful activity or (b) with the knowledge that the transaction was designed at least in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the unlawful activity.

*United States v. Gotti*, 459 F.3d 296, 334 (2d Cir.2006). The specified unlawful activities alleged here are access device fraud, in violation of 18 U.S.C. § 1029(a); conspiracy to commit access device fraud, in violation of 18 U.S.C. § 1029(b)(2); identity theft, in violation of 18 U.S.C. § 1028; and aggravated identity theft, in violation of 18 U.S.C. § 1028A. (Dkt. No. 1, ¶ 5). Because the Court finds that the Government has met its burden of proof with respect to concealment money laundering, the Court does not address promotional money laundering.

"[T]he concealment element of the money laundering statute requires that the purpose, not merely the effect, of the endeavor must be to conceal or disguise a listed attribute of the proceeds." *United States v. Garcia*, 587 F.3d 509, 512 (2d Cir. 2009) (citing *Cuellar v. United States*, 553 U.S. 550, 564–67 (2008)); *see also United States v. Huezo*, 546 F.3d 174, 179 (2d Cir. 2008) ("*Cuellar* confirms that a conviction for . . . [§ 1956(a)(1)(B)(i)] money laundering . . . requires proof that the purpose or intended aim of the transaction was to conceal or disguise a specified attribute of the funds.").

Here, the complaint alleges that on January 18, 2023, after $174.99 in diesel fuel had been pumped in the Defendant Vehicle at a Stewart's Shops in Hamilton, New York, the owner

3

of a credit card called the Stewart's Shop location and reported that an unauthorized charge of $175 had been made on his card at the store. (Dkt. No. 1, ¶¶ 12–13, 16). An asset protection manager for Stewart's Shops told the New York State Troopers who responded to the scene that on the prior day, January 17, 2023, a man pumped gas into the Defendant Vehicle at a station in Hamilton, New York for forty minutes in twenty-two separate transactions utilizing ten separate credit card numbers. (*Id.* ¶¶ 23–25). In total, 691.452 gallons of diesel totaling $3,802.29 was pumped into Defendant Vehicle at that station. (*Id.* ¶ 25). Also on the 17th, Defendant Vehicle was observed at a fuel station in West Winfield, New York and again, a large amount of fuel was pumped in using numerous credit and debit cards. (*Id.* ¶ 27). A trooper with the New York State Commercial Vehicle Enforcement Unit found significant modifications to Defendant Vehicle, including gasoline lines running into the trailer unit, inconsistent with any commercial vehicle combination unit he had ever inspected. (*Id.* ¶ 29). According to the trooper, these modifications were "designed to transfer fuel from the main tanks to the trailer unit," (*id.*), and allowed Defendant Vehicle to hold an "unusually large amount of weight" such that it was found, at 93,000 pounds to be overweight by New York State Commercial Vehicle Enforcement standards, (*id.* ¶¶ 17, 29, 34). Approximately 6,423 gallons of diesel fuel were pumped out of Defendant Vehicle on January 18, 2023. (*Id.* ¶ 35).

During the execution of a search warrant on Defendant Vehicle, law enforcement found six skimmers along with credit cards corresponding with some of the cards used to pay for fuel pumped into Defendant Vehicle. (*Id.* ¶¶ 31–32). The driver of Defendant Vehicle had a Florida license and the passenger of Defendant Vehicle had a New Jersey license. (*Id.* ¶¶ 19–20). The plate on the tractor was registered to "MMJ Logistics," with the same New Jersey address as on

the passenger's license and the trailer was registered to "MMY Logistics," with a different New Jersey address. (*Id.* ¶¶ 21–22).

In support of its renewed motion for default judgment, the Government submitted an affidavit from Federal Bureau of Investigation Special Agent ("SA") Conner Hawes. (Dkt. No. 22-3). SA Hawes explained a common pattern observed in the Northern District of New York and elsewhere wherein individuals steal credit card information via sophisticated skimming devices and then launder the proceeds of the fraud by (1) buying skimmers to install at additional fuel pumps to promote the conspiracy and (2) using the funds to purchase another good or product, such as gift cards or diesel fuel, that can subsequently be sold to launder the fraud proceeds. (*Id.* ¶ 3–4). With respect to the second method, the goods or products are typically sold through unregulated channels, such as illicit trucking companies or gas stations, to "further obfuscat[e] the origins of the proceeds" and "attenuate the eventual proceeds from the sale of the fuel from the original fraudulent sources of the funds[.]" (*Id.* ¶¶ 5–6). Using diesel fuel in this way, as an intermediary asset, can indicate "a desire to minimize direct interaction with banks and other institutions with heightened scrutiny." (*Id.* ¶ 8).

SA Hawes attests that the facts as alleged here fit into this common pattern. (*Id.* ¶ 3). He noted that GPS data showed that "individuals involved in this scheme employed tactics such as location hopping throughout the Northeast, to avoid the detection of law enforcement by fueling up in multiple locations." (*Id.* ¶ 7). Additionally, that multiple skimmers were found within Defendant Vehicle could indicate that "the subjects of the investigation intended to install additional skimmers during their trip to the Northern District of New York." (*Id.* ¶ 13).

Section 1956 requires proof that the purpose of the transaction was to conceal, and that proof can be established circumstantially if it can be inferred that the actors knew the transaction would have the relevant effects. *Cuellar*, 553 U.S. at 567 n.8. Here, SA Hawes explained that the use of diesel fuel as an intermediary asset is a "sophisticated scheme[ ]" with actors "at the top of the scheme's hierarchy" benefiting from the proceeds, and that the scheme evinces a "nuanced understanding of financial institutions and money laundering." (Dkt. No. 22-3, ¶¶ 8–9). He compared the "pattern of facts," (*id.* ¶ 3), to other cases wherein the actors installed skimmers on gas pumps and used the information obtained to purchase items of value that could then be sold, such as *United States v. Conill*, 1:19-cr-348 (N.D.N.Y. Sept. 26, 2019), *United States v. Rodriguez*, 2:24-cr-28 (E.D. Va. Apr. 17, 2024), and *United States v. Colina*, 6:21-cr-144 (M.D. Fla. Nov. 12, 2021). (*Id.* ¶¶ 10, 14–15). "A notable commonality among these schemes is the ensuing laundering of the funds from the underlying fraud through the purchase of goods with the proceeds of the fraud that are subsequently sold," because this is harder for law enforcement to detect and trace. (*Id.* ¶ 6). It attenuates the proceeds from the sale of the fuel from the original fraudulent sources of funds, indicating intent to conceal. (*Id.*).

The Government relies on the above-stated facts and SA Hawes' affidavit to argue that Defendant Vehicle had been driven extensively around the Northeast, even though it had New Jersey plates, was registered to a company in New Jersey, and one of the targets located in the Defendant Vehicle had a New Jersey license plate. (Dkt. No. 22-2, at 11). The Government argues that if those involved in the scheme lacked intent to conceal, they could have obtained diesel fuel in New Jersey and in smaller quantities, as needed. (*Id.* at 12). "Moreover, the purchase of diesel fuel alone would have been of absolutely no value to the targets unless the fuel was destined for subsequent resale, or used to fuel other vehicles." (*Id.*). According to the

Government, the "totality of the facts support a finding that it is more likely than not that the Defendant Vehicle is property involved in concealment money laundering." (*Id.* at 10). The Court agrees.

Therefore, having found that the Government has met its burden of establishing by a preponderance of the evidence that Defendant Vehicle is subject to forfeiture as property involved in concealment money laundering, *see* 18 U.S.C. §§ 983(c)(1), 983(c)(3); *see also* Supp. R. G(2)(f); 18 U.S.C. § 981(a)(1)(A), the Government's motion for default judgment is granted.

## IV.  CONCLUSION

For these reasons, it is hereby

**ORDERED** that the Government's renewed motion for default judgment, (Dkt. No. 22-1), is **GRANTED**, and it is further

**ORDERED** that judgment of default be entered against the Defendant Vehicle; and it is further

**ORDERED** that the Defendant Vehicle is hereby forfeited to the United States; and it is further

**ORDERED** that any claims to the Defendant Vehicle are hereby forever barred.

**IT IS SO ORDERED.**

Dated: October 22, 2024
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge